The PRESIDENT
delivered the opinion of the court.
The first question which presents itself in this case, is, whether the agreement of *444 1776, shall stand as the basis of settlement between the parties, or, if that should be set aside, because Mr. Braxton superseded and reversed the judgment, for want of a ■declaration as it is said, but for what cause, does not appear?—
If the judgment had been entered up immediately, and Mr. Braxton had reversed it for want of form, there might have been reason in the objection. But since it was kept up until the year 1784, (I will not say fraudulently, because the evidence does not warrant it,) and considerable payments intervened, which, Mr. Southerland himself admits, reduced the balance of £778 •. 7i: 4, principal in 1776, and interest, to ¿£361: 6: 10, principal in 1784; surely, fair dealing required, that these payments should have been mutually adjusted, previous to the entry of the judgment; or at least, that Mr. Braxton should have had notice, that the judgment was then to have been entered. If the judgment thus entered, was for too much, according to the agreement of 1776, surely, Mr. Braxton might complain of it, without violating that agreement. The proper remedy, was certainly in equity; but perhaps he was advised to seek redress in a court of law, as being the most expeditious. Be this as it may; what is a Court of .Equity now to do? to set aside an agreement, (of the fairness and justice of which, neither party complains,) because subsequent disputes have arisen, about payments made in execution of the agreement, and so, subject Mr. Braxton to 10 per cent, instead of S, from 1776, and to 40 per’ cent exchange, instead of 15, on the .final balance. — This would be, for that meliorating court, not to relieve against penalties and forfeitures, but to assist in enforcing them. For after all negotiation of a bill is at an end, and forbearance, the only object, the additional 5 per cent must be considered as a penalty, being beyond the legislative compensation allowed for the use of money. On the contrary, that court, applying one of its fixed principles, namely, “that what ought to have been done, shall be taken as done,” will consider the judgment as having been entered up, immediately after the agreement in *1776, for the ^778 : 7 : 4, current money, and interest at 5 per centum per annum, and on that ground will adjust the subsequent disputes.
In doing this, we shall have two points to consider — the first, and most important is, the application of Butler’s bonds, paid and received in 1783. Whether the whole, amounting to ,£955: 15: 1, ought to be applied to the credit of the bill, (and which will with other specie payments reduce the balance to .£44: 0: 11, in 1790?) or whether j£205, part thereof, ought to be applied to the bond, in which Mr. Claiborne was security for Braxton, and to an account, the balance of which is in favor of Braxton, more than the £44: 0: 11, if his paper money account is to stand at the nominal, and not at the reduced value?-
The rules, respecting the application of payments, are not disputed; but the question is, how they are to apply, under the circumstances of the present case ? How Mr. Braxton intended it, appears from his declaration to Mr. Butler, made recently after the payment. It was natural, that he should apply them to the relief of his friends, who stood bound as his securities; and in the choice between them, he might have motives, for prefering the endorsers of his bill; and accordingly, when these bonds were paid in 1783, Mr. Braxton, sent a message to the indorsers, that he had made this payment on account of the bill. This message, was not delivered in the absence of, nor was it communicated to Mr. Southerland, so as to fix his assent to that application. But the appellants suppose, that this assent is to be inferred, 1st, from Southerland’s declaration, (which is proved,) that he should lose by taking those bonds — and 2dly, from Mr. Souther-land’s application to Mr. Claiborne in 1784, (which is also proved,) warning him of his danger, and preparing him for the expected payment: andtho’, he afterwards said, that he believed this bond might be paid, yet he refused to give it up, and never did do so, ’till 1786, when the judgment was reversed ; then by the advice of his counsel, he sent it with other papers to Mr. Brax-ton.
On this view of the evidence, the auditors, and the master thought, that the whole should be applied to the credit of the bill. The chancellor thought otherwise, and applied part of it to the bond and account. Whether he was right in doing so, this court is to decide; and upon this question it depends, whether Mr. Hill be at all concerned with the other parts of the dispute; or is liable beyond the £44: 0: 11, in case that was not paid off by Mr. Brax-ton?
*Although, if the debtor neglect to make the application at the time of payment, the election is then cast upon the creditor, yet it is incumbent upon the latter, in such a case, to make a recent application, by entries in his books or papers, and not to keep parties and securities in suspence, changing their situation, from time to time, as his interest, governed by events might dictate. The endorsers, were made easy by the message from Mr. Brax-ton, “that the payment was applied to their relief,” and might in consequence of it, have declined asking for counter security. On the other hand, Claiborne was not deceived, because it does not appear, that he considered his debt as discharged by those bonds.
Besides, it is more probable, that so large a payment would be applied to the credit of a still larger liquidated debt, than that it should be split, and placed, part of it to the credit of a small bond and account, and the residue to this large bond.
Upon the whole, we are of opinion, that the payment should be applied to the bill; and consequently, that the balance due upon that account, is but £341: 17: 9}4, with *445 interest from the 7th of December 1784.— Respecting1 the mode of stating the interest, a doubt arose, which induced one judge to decline giving his opinion, and he would have retired from the discussion, considering himself affected in the question, in his character of administrator; but the other judges, not considering the point as important in its operation, in this case, chose to pass it over, on the ground of the master’s report not having been excepted to, or the point argued in court, rather than by a decision, either way, to establish a precedent in a bare court, which in other cases might be important.
The next question, arises between Brax-ton and Southerland, respecting the articles of their account, and principally, on Brax-ton’s account, for goods sold to Southerland. It is to be considered at what rate those goods shall be estimated. — The account begins in September 1777, in which year it amounted to ¿ 8: In 1778 to 97: 1: 6. and ends in 1780, — one article 142: 10:
247: 11: 6.
The court is of opinion, that an account for goods, not delivered nor accepted as a payment, nor liquidated between the parties, ought not to be taken as a payment in paper, so as to stand at the nominal value, according to the strict words of the *act of Assembly, but should be viewed in the light of a set off, and to be adjusted, (especially in equity,) upon just principles. In this proceeding, we are of opinion, that the legal scale, so far as it operates in the years 1777 and 1778, is not a just rule in itself, not corresponding with the general opinion of the citizens at the time, as to depreciation, nor does the scale at any period, give a proper rule for fixing the price of imported goods, which was influenced by the expence and risque of importation, as well as by the depreciation of the paper money. The account therefore, for goods delivered by Braxton to the end of the year, 1778, ought, at the nominal value, to be set off against the principal and interest of Claiborne’s bond, and Southerland’s account; and so much of the residue of his account, as will pay off the interest of the balance remaining due to Southerland, ought also to be set off at the nominal sum; but the residue of the amount of this account, ought to be subject to the legal scale of depreciation, for May 1780, of 60 for one, and at that reduced rate, to be set off against the principal of Souther-land’s debt: — a precedent for this distinction, between the principal and interest, is supposed to have been furnished in this court.
Upon the whole; the decree is right in sustaining the suit for relief, but is erroneous in the relief afforded, not only in the adjustment of the quantum, but in the application of it, as between the appellants. —It is to be reversed with costs — and upon payment by the appellant Hill, of the first mentioned sum of j£34: 17: 9J4), with interest from the 7th of December 1784, ’till payment, and the costs of the judgment at law,, (the said appellant, retaining thereout, his costs in chancery, and in this court,) the injunction is to stand and be perpetual. But on failure in such payment, the injunction is to be dissolved as to so much, and the appellee to be at liberty to sue out execution for so much as he is entitled to by this decree.
The court, then proceeded to correct the account of the master commissioner, (upon the principles before stated), as to the residue of the dispute, between the appellee, and the appellant Braxton; and find a balance due from the latter to the former, of ;£70: 0:4, on the 30th April 1783--and since Braxton by applying to a Court of Equity for an account, has subjected himself, though plaintiff, to a decree for the balance found due from him; we must decree him to pay to the appellee the sum of ^70: 0: 4, with interest from the 30th of April 1783, retaining thereout his costs in chancery and in this court.
Decree reversed.